

February 17, 2023

**By ECF**

Honorable Michael A. Hammer
United States Magistrate Judge
United States District Court for the District of New Jersey
Martin Luther King Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    *In re Revlimid & Thalomid Antitrust Litigation*, No. 19-cv-7532-ES-MAH (D.N.J.)

Dear Judge Hammer:

      We represent Plaintiff United HealthCare Services, Inc. ("UHS") in the above-captioned matter and write in response to the Court's Order directing UHS to explain the proposed amendments to its Complaint and the basis for seeking leave to amend at this time. *See* Order, ECF No. 134. Although UHS certainly did not intend to obscure its proposed amendments in its letters requesting permission to seek leave to amend,[1] its contemplated additions to its Complaint introduce **no novel claims, parties, or legal theories to this litigation**. Instead, and after having reviewed for the first time Defendant Celgene Corp.'s ("Celgene") confidential settlement agreement with Natco Pharma Ltd. ("Natco") (the "Natco Settlement Agreement") that Celgene produced to plaintiffs late last month, UHS's proposed Amended Complaint asserts the same claims and nearly identical allegations previously asserted by the other plaintiffs in this litigation, while also including as defendants Natco and its marketing partner, Teva Pharmaceuticals USA, Inc. ("Teva"), as other plaintiffs have recently done. While other plaintiffs may have had their own sources and information as to the specific terms of the confidential Natco Settlement Agreement, UHS chose to obtain and analyze the Agreement terms for itself and conduct its own diligence— as permitted by the Court's existing amendment deadline—before seeking leave to amend.

      Notably, just yesterday, the Retailers and EPPs class plaintiffs amended their complaints to add parties as plaintiffs and dismiss claims against certain defendants, asserting the same claims already existing in the litigation—further demonstrating the lack of any prejudice that could justify precluding UHS's amendments at this time.

      For these reasons and those set forth below, UHS requests leave to amend its Complaint.[2]

---

[1] In accordance with the Court's Pretrial Scheduling Order, UHS sought the Court's written permission to file a motion for leave to amend and an associated motion to file under seal. *See* Letter, ECF No. 128; *see also* Pretrial Scheduling Order, ECF No. 81 at 5. UHS filed another letter responding to Defendants Celgene Corp. and Bristol-Myers Squibb's ("BMS") letter requesting that the Court not consider any further amendments at this time. *See* Letter, ECF No. 132.

[2] In accordance with Local Civ. R. 15.1(a), UHS has prepared a version of the proposed Amended Complaint that compares its materials with those in the currently operative Complaint. However, UHS is not submitting the



## I. Procedural Background

Plaintiff filed its original and currently operative Complaint on March 6, 2020. *See* Complaint, *United HealthCare Services, Inc. v. Celgene, Inc.*, No. 20-cv-686, ECF No. 1 (D. Minn. Mar. 6, 2020). On Celgene's motion, the case was then transferred to this District, *see United HealthCare Servs., Inc. v. Celgene Corp.*, No. 20-cv-686, 2020 WL 7074626 (D. Minn. Dec. 3, 2020), and in October 2022 was consolidated with a number of other similar cases for pretrial proceedings, *see* Consent Order, *In re: Revlimid & Thalomid Purchaser Antitrust Litigation*, No. 19-cv-7532, ECF No. 95 (D.N.J. Oct. 17, 2022). Plaintiff's original Complaint, as well as those of the other plaintiffs in this now-consolidated matter, generally alleged that Celgene rigged the markets for the drugs Thalomid® (thalidomide) and Revlimid® (lenalidomide) by, amongst other conduct, ginning up pretextual safety concerns to justify its refusal to sell samples of those drugs to would-be generic manufacturers, stymieing those manufacturers' ability to bring their lower-cost products to market. *See* Complaint, *United HealthCare Services*, No. 20-cv-686, ECF No. 1 ¶¶ 85–235. The original Complaint also alleged that Celgene committed fraud on the U.S. Patent and Trademark Office in obtaining an impenetrable web of patents related to Revlimid and Thalomid, and then weaponized its ill-gotten intellectual property against the generic manufacturers in an all-out patent litigation war to further delay the entry of generic versions of both Revlimid and Thalomid and thereby maintain the supracompetitive prices of those drugs.[3] *Id.*, ¶¶ 236–374. On the basis of those allegations, UHS brought monopolization claims against Celgene under Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as claims under state antitrust and consumer protection statutes, and common law tort claims. *Id.*, ¶¶ 444–514.

In May 2022, plaintiffs Humana, Cigna, Molina, Blue Cross and Blue Shield Association, and Blue Cross and Blue Shield of Michigan (together with UHS, the "Health Benefit Provider Plaintiffs") amended their complaints to allege that Celgene entered into an unlawful reverse payment settlement with Natco to allocate the market for Revlimid and further delay the introduction of generic competition.[4] *See, e.g.*, Amended Complaint, *Humana Inc. v. Celgene*

---

comparison version with this letter, both because UHS does not understand the Court's Order (ECF No. 134) to have required it and because the proposed Amended Complaint references portions of the Natco Settlement Agreement which Celgene has designated as "Highly Confidential" under the terms of the Stipulated Discovery Confidentiality Order (ECF No. 89). As such, the comparison version (and any version of the proposed Amended Complaint, if permitted) must be filed under seal. UHS has had discussions with counsel for Celgene about the sealing process, including ultimately filing a redacted version of the Amended Complaint on the public docket if permitted following the Court's adjudication of a motion to file under seal.

[3] UHS also alleged that Celgene separately employed a charity co-pay scheme based on deceptive practices and false pretenses to further artificially increase prices and sales of Revlimid and Thalomid. *See* Complaint, *United HealthCare Services*, No. 20-cv-686, ECF No. 1 ¶¶ 411–443. In particular, UHS claimed that Celgene made tens of millions of dollars in "donations" to organizations that assisted patients in covering their financial obligations for Revlimid and Thalomid, including co-payments. *See id.* As explained in the original Complaint, these "donations" had the effect of mollifying doctor and patient concerns regarding the ever-rising prices of Revlimid and Thalomid while shouldering payors like UHS with the additional cost burdens. *See id.*

[4] The Court had ordered that "within thirty days of the District Court issuing the ruling on the statute of limitations arguments raised by Defendants' motion to dismiss in *Humana Inc. v Celgene Corp.*, No. 19-cv-7532 (D.N.J.), Plaintiffs will file any amended complaint in any or all of the above-listed matters." Order, ECF No. 61 at 3. The



*Corp., et al.*, No. 19-cv-7532, ECF No. 68 (D.N.J. May 27, 2022). These plaintiffs contended that Celgene and its parent company, BMS, initiated sham patent litigation against Natco to forestall Natco's plans to bring generic Revlimid to market. *See, e.g., id.*, ¶¶ 337–363. Natco settled that litigation, plaintiffs alleged, in exchange for a "reverse payment" from Celgene—a payment of the vintage the Supreme Court condemned in *FTC v. Actavis*, 570 U.S. 136 (2013)—that comprised a two-pronged in-kind payment: (1) a volume limited, royalty-free license to sell generic Revlimid before full generic competition began—which amounts to hundreds of millions of dollars in value to Natco—and (2) acceleration and most-favored entry clauses that both deterred later-filing generic manufacturers of Revlimid from challenging Celgene's Revlimid-related patents through judgment and induced Natco to accept a later entry date for its generic Revlimid by eliminating the risk that Natco would lose its lucrative generic exclusivity period. *See, e.g.*, Amended Complaint, *Humana Inc.*, No. 19-cv-7532, ECF No. 68, ¶¶ 364–375. Plaintiffs also asserted that the acceleration clauses paved the way for a series of illegal market allocations with other would-be generic Revlimid manufacturers that later sought to bring their generic products to market, and that Celgene settled suits against those later-filing generic manufacturers on terms that shored-up the anticompetitive terms (and the windfall of profits) of the reverse payment Natco Settlement Agreement. *See, e.g., id.*, ¶¶ 376–444. Also added to the complaints were more contentions concerning Celgene and BMS's patent litigation against later-filing generics that kept competition at bay and lower-cost pharmaceutical options away from consumers. *See, e.g., id.*, ¶¶ 445–539. These allegations formed the basis of several new claims against Celgene and BMS, including restraint of trade claims brought under Section 1 of the Sherman Act and analogous claims under various states' antitrust laws. *See, e.g., id.*, ¶¶ 570–635.

Additionally, two other groups of plaintiffs—retailer pharmacies ("Retailers") and health insurance trust funds ("End-Payor Plaintiffs" or "EPPs")—filed similar complaints against Celgene and BMS in November 2022. *See* Complaint, *Walgreen Co. and Kroger Specialty, Inc. v. Celgene Corp., et al.*, No. 22-cv-6440, ECF No. 1 (D.N.J. Nov. 3, 2022); Complaint, *Fraternal Order of Police et al. v. Celgene Corp., et al.*, No. 22-cv-6694, ECF No. 1 (D.N.J. Nov. 18, 2022). The Retailers and EPPs' complaints contained more details concerning the Natco Settlement Agreement terms than the amended complaints filed by the Health Benefit Provider Plaintiffs months earlier. *See, e.g.*, Amended Complaint, ECF No. 139 ¶¶ 125–53. Further, and unlike the other Health Benefit Provider Plaintiffs, the Retailers class has named Natco and Teva as defendants (the EPPs class names Teva, but not Natco). *See, e.g.*, Amended Complaint, ECF No. 135 ¶¶ 22–23. The Retailers and EPPs actions have been consolidated with the Health Benefit Provider Plaintiffs' actions for pretrial proceedings. *See* Order, ECF No. 122.

In the meantime, Celgene and BMS have moved to dismiss the Health Benefit Provider Plaintiffs' complaints. *See* Motion to Dismiss, ECF No. 104. Briefing on that motion was completed in November 2022. Celgene will also move to dismiss the Retailers and EPPs class complaints in the coming weeks. *See* Letter, ECF No. 130 at 2.

---

Court then denied Defendants' motion to dismiss in the *Humana* case on April 27, 2022, *see* Opinion, ECF No. 63, and the other Health Benefit Provider Plaintiffs therefore filed their amended complaints on or before May 27, 2022.



## II. UHS's Proposed Amended Complaint Adds No New Parties, Claims, or Legal Theories to this Litigation

On January 23, 2023, Defendants produced nearly seven million pages of documents to Plaintiffs. *See* Letter, ECF No. 124 at 5. Within that production was the Natco Settlement Agreement. Based on its review of that document, UHS now seeks to amend its Complaint to bring its pleading into alignment with those of the other Health Benefit Provider Plaintiffs and the Retailers and EPPs classes—though with supplementary facts concerning specific terms of the Natco Settlement Agreement those complaints did not provide. Like the other plaintiffs' amended pleadings, UHS's proposed Amended Complaint includes allegations concerning Celgene's anticompetitive scheme to exclude generic competitors from selling AB-rated equivalents to Thalomid and Revlimid, and in particular its pay-for-delay strategy that included the Natco Settlement Agreement that allocated the market for Revlimid and further delayed the introduction of generic competition. In addition to UHS's extant claims, the proposed Amended Complaint now asserts that certain terms of the Natco Settlement Agreement violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and state analogue statutes. Like the Retailers' existing complaint, Plaintiff's proposed Amended Complaint also includes as defendants Natco and Teva (collectively with Celgene, "Defendants"), as arising from their participation in the Natco Settlement Agreement and related conduct (the EPPs class also brings these claims against Teva, but not Natco).

So, while UHS's proposed Amended Complaint adds a limited number of facts concerning certain provisions of the Natco Settlement Agreement, the proposed Amended Complaint makes **the same claim as other plaintiffs**: That certain Natco Settlement Agreement terms amount to an unlawful pay-for-delay reverse settlement that blocked generic competition to the detriment of purchasers and payors like UHS and its Pharmacy Assignors.

More, as stated in its February 14 letter and given the overlap with other plaintiffs' existing claims, UHS has agreed to abide by any ruling on the pending motions to dismiss the complaints of the other Health Benefit Provider Plaintiffs and the forthcoming motions to dismiss the complaints in the Retailers' and EPPs cases concerning the same claims.[5] *See* Letter, ECF No. 132 at 1.

## III. The Timing of UHS's Proposed Amendment is Appropriate

The timing of UHS's proposed Amendment works no prejudice on Defendants. After uncovering the Natco Settlement Agreement within Defendants' massive production, UHS moved quickly to assess the Agreement and amend its claims within the time frame ordered by the Court. Further, as discussed above, the other Health Benefit Provider Plaintiffs and the Retailers and EPPs classes have already launched essentially identical claims against Defendants. In addition to UHS having agreed to abide by rulings on the pending and planned motions to dismiss as to these claims,

---

[5] UHS reserves all appellate rights as if it were a party to those motions.



the discovery period remains open for months for Defendants to conduct discovery on these claims—which, again, are substantively no different than those of the other plaintiffs in this case.

    a. <u>The Standard for Seeking Leave to Amend is Lenient</u>

The standard for seeking leave to amend is forgiving. "Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary." *Robinson v. Horizon Blue Cross-Blue Shield of New Jersey*, No. 12-cv-2981, 2015 WL 802705, at *3 (D.N.J. Feb. 25, 2015), *aff'd*, 674 F. App'x 174 (3d Cir. 2017). It is a "liberal rule" with a "lenient standard": the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1484 (3d ed.) ("Subdivision (a)(2) encourages the court to look favorably on requests to amend."). Rule 15's relatively low bar ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). In practice, this means that "[i]n the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend." *Ingris v. Borough of Caldwell*, No. 14-cv-855, 2015 WL 3613499, at *2 (D.N.J. June 9, 2015) (Hammer, J.); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust").

    b. <u>The Proposed Amended Complaint Does Not Reflect Bad Faith, Undue Delay, or Dilatory Motive</u>

Although courts may deny a motion for leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant," no such intransigence is present here. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Instead of amending its Complaint to include allegations concerning the Natco Settlement Agreement based on the limited information available to it in May 2022 (when the other Health Benefit Provider Plaintiffs amended their complaints to include such allegations) or November 2022 (when the Retailers and EPPs filed their more detailed complaints), UHS waited until Defendants produced the Agreement and—in good faith reliance on the deadline set in the Court's Pretrial Scheduling Order—now seeks to revise its contentions upon review of that document. As courts in and out of this Circuit have recognized, proceeding in this manner does not reflect bad faith or unreasonable delay. To the contrary, "waiting to receive evidentiary support for [an] assertion in discovery before seeking leave to" amend allegations in a complaint is an "exercise[ in] reasonable prudence." *Cochlear Ltd. v. Oticon Med. AB*, No. 18-cv-6684, 2019 WL 3429610, at *9 (D.N.J. July 29, 2019). Thus, in *Cochlear Ltd.*, the Court granted leave to amend where, as here, the factual basis for the amendment was only discovered through documents exchanged during discovery. *Id.*, at *3; *see also Friedl v. City of New York*, 210 F.3d 79, 88 (2d Cir. 2000) (concluding that "there has been no showing of [] undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts"); *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 226 (E.D. Pa. 2012) (declining to find that the movant "engaged in any undue delay or dilatory tactics" and granting leave to amend where, as here, facts were learned during discovery). The Court should do the same in this case.

The fact that the other plaintiffs in this case apparently had their own sources that they felt provided grounds for asserting amended pay-for-delay claims months before UHS is not indicative of bad faith or undue delay on UHS's part. The Federal Rules of Civil Procedure require that a



party have an adequate factual foundation for its claims before initiating suit. *See* Fed. R. Civ. P. 11(b)(3). UHS should not be penalized for conducting its own diligence to confirm and corroborate allegations concerning the precise terms of the Natco Settlement Agreement before including those contentions in its Amended Complaint. That sentiment is shared by federal courts across the country. *See, e.g., Lauren v. PNC Bank, N.A.*, No. 14-cv-230, 2014 WL 1884321, at *2 (S.D. Ohio May 12, 2014) (granting motion for leave to amend where movant argued that "she should not be penalized for waiting to add [new] claims until after initial discovery produced documents supporting those claims"); *Weeks v. McLaughlin*, No. 09-cv-2498, 2010 WL 4115390, at *2 (D. Kan. Oct. 19, 2010) (finding movant did not unduly delay in moving to amend a pleading when movant held suspicions, but waited to seek amendment until after receiving written discovery responses which "provided added information to support the suspicions"). Thus, the reason that UHS's allegations and claims concerning the Natco Settlement Agreement were not brought before Celgene's motion to dismiss is because *Celgene did not produce the Natco Settlement Agreement before filing its recent motion to dismiss.*

Nor is the mere three-and-a-half-week delay between the production of the Natco Settlement Agreement—which had to be located amongst the large tranche of documents Defendants produced—suggestive of bad faith or undue delay, because courts do "not expect a litigant to amend a complaint immediately after evidence is uncovered." *Wagner v. Pat Salmon & Sons, Inc.*, No. 19-cv-1010, 2021 WL 229639, at *3 (M.D. Pa. Jan. 22, 2021). Indeed, courts in this Circuit allow much longer—in some cases, months' long—delays in amending pleadings following the development of additional facts. *See, e.g., Mullin v. Balicki*, 875 F.3d 140, 152 (3d Cir. 2017) (holding that approximate five-month delay between receipt of new evidence in discovery and motion to amend complaint was not undue); *Richardson v. Allied Interstate, Inc.*, No. 09-cv-2265, 2010 WL 3404978, at *5 (D.N.J. Aug. 26, 2010) (permitting amendment where the motion for leave was "filed seven months after the plaintiff learned the facts required to plead" the additional allegations). Here, the delay is measured in *weeks*, not months.

Thus, the proposed Amended Complaint does not reflect bad faith or undue delay, and UHS should be permitted leave to amend.

   c. <u>Amendment at This Time Will Not Prejudice Defendants and Requiring Delay for the Amendments Would Potentially Prejudice UHS.</u>

The timing of UHS's proposed amendment works no prejudice on Defendants. That is critical because "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur*, 434 F.3d at 204. Yet the mere talismanic invocation of "prejudice" does not suffice. Instead, the non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 426 (3d Cir. 1981)); *see also* 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary Rule 15 ("Historically, prejudice under Rule 15(a) has been equated with lost opportunity."). Thus, in assessing prejudice, courts in this Circuit consider whether the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)). The burden to establish prejudice rests with Defendants; UHS need not disprove it. *See Dopico v. IMS Trading Corp.*, No. 18-cv-74,



2016 WL 389984, at *1 (D.N.J. Feb. 1, 2016) ("Given the liberal standard under Rule 15(a), the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." (quoting *Wainwright v. City of Sharon*, No. 14-cv-1212, 2016 WL 110015, at *2 (W.D. Pa. Jan. 11, 2016))).

As explained, UHS has not delayed in seeking to file its Amended Complaint. *See* Sec. III.b., *supra*. Further, although Celgene and BMS have already served initial discovery requests, those requests were informed by the other Health Benefit Provider Plaintiffs' amended complaints, which contain substantively identical pay-for-delay allegations and claims to UHS's Amended Complaint. So, even if UHS's Amended Complaint was tendered earlier—for example, contemporaneously with the amended complaints of the other Health Benefit Provider Plaintiffs—Defendants have not been "deprived of the chance to present facts or evidence" because (i) the discovery process is only recently underway and remains open for many months, and (ii) UHS's for-for-delay allegations largely track those filed in other complaints in this consolidated action. *Bechtel*, 886 F.2d at 652 (finding no prejudice to defendant where, as here, the "case is still in the initial stages of discovery" at the time of amendment); *see also Immigrant Assistance Project of the L.A. Cty. Fed. of Labor v. INS*, 306 F.3d 842, 858 (9th Cir. 2002) (amendment of class to add new claimants with similar claims allowed because of similarity of claims and no prejudice to defendants); *Wilson v. Quest Diagnostics Inc.*, No. 18-cv-11960, 2020 WL 401814, at *4 (D.N.J. Jan. 24, 2020) (granting motion for leave to amend and finding any prejudice to defendant "incidental and insufficient" where, similar to here, "discovery began in earnest only months ago and remains open").

As to Defendants' pending and forthcoming motions to dismiss, the motions need not be scrapped or the Court's adjudication of them delayed because, again, UHS will abide by the Court's ruling on those motions to the extent the claims subject to the Court's decision overlap with UHS's claims in its proposed Amended Complaint. *See* Letter, ECF No. 132 at 1. Additionally, although Natco and Teva are new to UHS's individual case, they are neither new to this litigation nor unfamiliar with the proposed claims against them—indeed, they are facing similar claims in the Retailers and EPPs class cases.

In contrast, and as stated in UHS's February 14 letter, Defendants' proposed alternative of disallowing amendments until all motions to dismiss are resolved as to other plaintiffs stands to potentially inflict substantial prejudice upon UHS, absent agreement by all parties that all statutes of limitations as to UHS's proposed amended claims have been tolled. *See id.* Forcing UHS to await the Court's decision on Defendants' pending and forthcoming motions to dismiss would be unjust if Defendants are able to retain the ability to assert that applicable statutes of limitations are currently running.

d. The Proposed Amended Complaint is Not Futile

Finally, UHS's proposed Amended Complaint is not futile for the reasons set forth in the Health Benefit Provider Plaintiffs' opposition to Defendants' Motion to Dismiss. *See generally* Opposition to Motion to Dismiss, ECF No. 105. The standard for futility is identical to that for motions to dismiss brought under Fed. R. Civ. P. 12(b)(6), *see Otero v. Port Auth. of New York & New Jersey*, No. 14-cv-1655, 2018 WL 6567700, at *2 (D.N.J. Dec. 12, 2018) (Salas, J.), and so it is significant that a court in this District has denied Celgene's motion to dismiss substantially



similar antitrust claims against it, *see In re Thalomid & Revlimid Antitrust Litig.*, No. 14-cv-6997, 2015 WL 9589217, at *21 (D.N.J. Oct. 29, 2015) (Hayden, J.) (denying motion to dismiss antitrust claims against Celgene similar to those alleged in this case).

\*        \*        \*

For the foregoing reasons, UHS should be granted leave to amend its Complaint.

Respectfully submitted,

| | |
|---|---|
| **BOIES SCHILLER FLEXNER LLP** | **ZELLE LLP** |
| By: */s/ Sabina Mariella* | Judith A. Zahid (admitted *pro hac vice*) |
| Sabina Mariella | Eric W. Buetzow (admitted *pro hac vice*) |
| 55 Hudson Yards | 555 12th Street, Suite 1230 |
| New York, NY 10001 | Oakland, CA 94607 |
| Telephone:  (212) 446-2300 | Telephone:  (415) 693-0700 |
| smariella@bsfllp.com | jzahid@zellelaw.com |
| | ebuetzow@zellelaw.com |
| Hamish P.M. Hume (admitted *pro hac vice*) | |
| Michael S. Mitchell (admitted *pro hac vice*) | James R. Martin (admitted *pro hac vice*) |
| 1401 New York Avenue, NW | Jennifer Duncan Hackett (admitted *pro hac vice*) |
| Washington, D.C. 20005 | 1775 Pennsylvania Avenue, NW, Suite 375 |
| Telephone:  (202) 895-7580 | Washington, D.C. 20006 |
| hhume@bsfllp.com | Telephone:  (202) 899-4100 |
| mmitchell@bsfllp.com | jmartin@zellelaw.com |
| | jhackett@zellelaw.com |

***ATTORNEYS FOR PLAINTIFF UNITED HEALTHCARE SERVICES, INC.***

cc:
Counsel of record by ECF
Counsel for Celgene Corp. by e-mail